1
2
3                  UNITED STATES DISTRICT COURT
4                       DISTRICT OF NEVADA
5                              * * *
6    DAVID THOMPSON,                      Case No. 3:23-cv-00341-MMD-CSD
7                           Plaintiff,              ORDER
8         v.
     PERRY RUSSELL, *et al.*,
9
                            Defendants.
10

11   **I.    SUMMARY**

12           *Pro se* Plaintiff David Thompson, formerly incarcerated in the custody of the

13   Nevada Department of Corrections ("NDOC") at Northern Nevada Correctional Center

14   ("NNCC"), brings this civil rights action under 42 U.S.C. § 1983 to redress constitutional

15   and other violations he suffered while housed at NNCC when prison officials detained him

16   in excessive sunlight and heat conditions for over three hours on a single occasion in July

17   2021. (ECF Nos. 1-1, 6.) Defendants[1] filed a motion for summary judgment (ECF Nos.

18   52, 54 ("Motion")).[2] Before the Court is United States Magistrate Judge Craig S. Denney's

19   Report and Recommendation (ECF No. 75 ("R&R")), to which Thompson now timely

20   objects (ECF No. 78 ("Objection")), recommending the Court grant Defendants' Motion

21   on their arguments that (1) Thompson failed to exhaust his administrative remedies, and

22   (2) no genuine dispute of material fact exists as to the merits of the Eighth Amendment

23   conditions of confinement claim against Sergeant Walker. (ECF No. 75 at 1, 10.) The

24
25          [1]Defendant NDOC employees include Sergeant Sandra Walker and former
     Warden Perry Russell. (ECF No. 52.)

26
          [2]Thompson filed a response (ECF No. 68), and Defendants filed a reply (ECF No.
27   73). Thompson filed a motion to extend time to file an objection to the R&R (ECF No. 76),
     which the Court granted (ECF No. 77). Defendants filed a motion to extend time to file an
28   opposition to the Objection (ECF No. 79), which the Court also granted (ECF No. 80).

1    Court finds that Defendants have not met their burden to demonstrate an absence of

2    genuine disputes of material fact and, for reasons further explained below, the Court

3    rejects the R&R's recommendation to grant summary judgment on Defendants'

4    exhaustion argument. The Court finds genuine disputes of material fact preclude

5    summary judgment on the Eighth Amendment conditions of confinement claim and

6    therefore denies the Motion. The Court similarly denies summary judgment as to the

7    remaining grounds that the R&R did not address.[3]

8    **II.    RELEVANT BACKGROUND**

9            **A. Thompson's Allegations**

10           The Court previously screened Thompson's First Amended Complaint (ECF No. 6

11   ("FAC" or "Complaint")) and found that it stated colorable claims under the Eighth

12   Amendment for weather-related, sanitation, and medical conditions and the Fourteenth

13   Amendment Equal Protection Clause, the Americans with Disabilities Act ("ADA"), and

14   the Rehabilitation Act ("RA") for disability discrimination.[4] (ECF No. 7 ("Screening

15   Order").) The following facts are taken from the Court's Screening Order and adapted

16   from the Complaint.[5] (*Id.* at 3.)

17           Thompson suffers from multiple serious medical conditions, including Behcet's

18   disease—an auto-immune disorder—vertigo, and hearing impairment, which require him

19   to avoid prolonged exposure to sunlight. (*Id.*) Thompson, who was housed in the medical

20   unit ("Unit 3") at NNCC and assigned a wheelchair for part-time use, had been enrolled

---

22   [3]Because the Magistrate Judge recommended granting summary judgment on the
23   exhaustion ground, he did not address Defendants' other arguments—that they are
     entitled to qualified immunity and that some of the claims fail on the merits.

24   [4]The Court permitted Thompson to proceed on the Eighth Amendment medical
25   indifference claim against former Warden Perry Russell. (ECF No. 7 at 8-9.) The Court
     allowed the remaining claims to proceed against NDOC employee Sergeant Sandra
26   Walker, including: (1) an Eighth Amendment conditions of confinement claim for alleged
     detainment in excessive heat conditions (*id.* at 7-8); (2) a Fourteenth Amendment Equal
27   Protection Clause claim (*id.* at 9-10); and (3) disability discrimination claims under the
     ADA and RA against Walker in her official capacity (*id.* at 10-12).

28
             [5]The following facts are undisputed unless otherwise noted.

in the prison's chronic care clinic for over a decade. (*Id.* at 4.) He asserts that both Warden Russell and Sergeant Walker were aware of his medical conditions and mobility restrictions. (*Id.*)

On July 11, 2021, at 11:15 a.m., Walker ordered Thompson and approximately 100 other elderly and medically vulnerable Unit 3 inmates to be detained for over three hours on the outdoor athletic field without access to water, toilets, shade, or shelter during an extreme heat warning, with temperatures exceeding 100 degrees.[6] (*Id.*)

Thompson alleges that the decision to detain Unit 3 outside on the field was discriminatory. (*Id.*) In particular, Thompson claims Unit 3 inmates were told "they were being detained on the athletic field because Walker didn't want their wheelchairs and walkers on the gym floor,"[7] while able-bodied inmates from the same unit were allowed to return indoors at 12:05 p.m.[8] (*Id.* at 5.)

Thompson claims he suffered extreme sunburn, heat exhaustion, migraines, fever, chills, and incontinence during the detention and continued to suffer ongoing symptoms, thereafter, including worsened migraines, new skin issues, vertigo, and increased reliance on his wheelchair. (*Id.* at 4.) Thompson's continuing requests for medical attention were either ignored or denied. (*Id.* at 5.)

**B. Grievance History and Exhaustion**

Three days after the incident, Thompson filed an informal-level grievance

---

[6]According to Defendants, Unit 3 inmates were moved outside to allow staff to conduct a unit compliance check. (ECF No. 52 at 3-4; ECF No. 52-10 at 3.) In her sworn declaration, Walker states that she instructed the correctional officers conducting the compliance check to offer "gate calls" every 30 minutes, allowing inmates access to water, shade, and restrooms. (ECF No. 52-10 at 3.)

[7]In her sworn declaration, Walker counters that she "never ordered the correctional officers conducting the unit compliance check to prohibit inmates who used wheelchairs or walkers from entering the gym." (ECF No. 52-10 at 3.)

[8]Thompson asserts that inmates from the "SCU" division of Unit 3 were "called back inside." (ECF No. 7 at 5.) In Nevada prisons, the Structured Care Unit ("SCU") houses individuals with mental health needs. https://doc.nv.gov/facilities/nncc_facility/. Thus, the Court infers that Thompson's reference to SCU inmates refers to those without physical disabilities.

1    (Grievance No. 20063124885) on July 14, 2021, referencing conditions of confinement.

2    (ECF No. 52-3 at 4.) He then filed a first-level grievance on August 18, 2021 (*id.* at 13)

3    and a second-level grievance on October 6, 2021 (*id.* at 26). Defendants now move for

4    summary judgment, in part, on the basis that Thompson failed to exhaust his

5    administrative remedies as required by the Prison Litigation Reform Act ("PLRA") as to

6    all claims except the Eighth Amendment conditions of confinement claim, which

7    Defendants seek to dismiss based on an absence of genuine dispute of material facts.

8    (ECF No. 52 at 7-9, 13-14.)

9    **III.    DISCUSSION[9]**

10    The Court "may accept, reject, or modify, in whole or in part, the findings or

11    recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where, as here,

12    a party timely objects to a magistrate judge's R&R, the Court must "make a *de novo*

13    determination of those portions of the R&R to which objection is made." *Id.* The Court's

14    review is thus *de novo* because Thompson filed his Objection (ECF No. 78). The Court

15    first addresses Defendants' administrative exhaustion argument and rejects Judge

16    Denney's recommendation to grant summary judgment. The Court next turns to the merits

17    of Thompson's Eighth Amendment conditions of confinement claim against Walker and

18    finds, on *de novo* review, that, because genuine disputes of material fact exist, the Court

19    will deny summary judgment.

20    **A. Substantive Exhaustion and Adequacy of Thompson's Grievances**

21    Defendants argue in their Motion that Thompson failed to exhaust his

22    administrative remedies, as required by the PLRA, as to his (1) Eighth Amendment

23    deliberate indifference to serious medical needs claim, (2) Fourteenth Amendment equal

24    protection claim, and (3) disability discrimination claims under the ADA and RA. (ECF No.

25    52 at 7-9.) In particular, Defendants argue that while Thompson grieved his detention in

26

27    [9]The Court incorporates by reference Judge Denney's description of the
background of the case and recitation of pertinent allegations in the FAC, provided in the

28    R&R. (ECF No. 75 at 1-2.)

4

1   extreme weather during the compliance check, he did not raise concerns about his
2   medical care or allege age- or disability-based discrimination during the grievance
3   process, and therefore failed to put NDOC on notice of those remaining claims[10]. (*Id.* at
4   9.) Viewing the record in the light most favorable to Thompson,[11] however, the Court
5   disagrees.

6        Under the PLRA, "[n]o action shall be brought with respect to prison conditions
7   under section 1983 of this title, or any other Federal law, by a prisoner confined in any
8   jail, prison, or other correctional facility until such administrative remedies as are available
9   are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust administrative remedies is
10  "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d
11  1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)). To
12  exhaust administrative remedies within the NDOC, inmates must follow the procedures
13  set forth in Administrative Regulation ("AR") 740, and they must complete three tiered
14  levels of a grievance: informal, first, and second review. (ECF No. 52-7.)

15       The PLRA requires *proper* exhaustion. *See Woodford v. Ngo*, 548 U.S. 81, 89
16  (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) ("proper
17  exhaustion" means "using all steps the agency holds out"); *see also Reyes v. Smith*, 810
18  F.3d 654, 657 (9th Cir. 2016) (noting that to properly exhaust their administrative
19  remedies under the PLRA, a plaintiff must adhere to "critical procedural rules"). This
20  means that, generally, inmates must adhere to institutional grievance procedures. The
21  Supreme Court has opined on the level of detail necessary in a grievance to put the prison

22  _____

23       [10]Remaining claims include the (1) Eighth Amendment medical deliberate
24  indifference to serious medical needs claim, (2) Fourteenth Amendment equal protection
    claim, and (3) ADA and RA discrimination claims.

25       [11]In evaluating a summary judgment motion, a court views all facts and draws all
26  inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v.
    Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). "If undisputed evidence
27  viewed in the light most favorable to the [nonmoving] prisoner shows a failure to exhaust,
    a defendant is entitled to summary judgment under Rule 56." *Albino v. Baca*, 747 F.3d
28  1162, 1166 (9th Cir. 2014). However, "[i]f material facts are disputed, summary judgment
    should be denied, and the district judge rather than a jury should determine the facts." *Id.*

on notice of a claim and has held: "[t]he level of detail necessary . . . to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock,* 549 U.S. 199, 218-19 (2007) (holding that prisoners could not be required to name all defendants in a grievance where the prison's procedures did not mandate such).

A prison grievance need not contain all the elements or specificity of a future legal claim to satisfy the exhaustion requirement. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) ("A grievance need not include legal terminology . . . unless . . . in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim."). This is because "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id.* (citing *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004)). Moreover, an inmate's compliance with the PLRA exhaustion requirement as to some, but not all, claims does not warrant dismissal of the entire action. *See Jones*, 549 U.S. at 219-24; *Lira v. Herrera*, 427 F.3d 1164, 1175 (9th Cir. 2005) (rejecting a total exhaustion requirement and holding that where a prisoner's complaint contains both exhausted and unexhausted claims, a district court should dismiss only the unexhausted claims).

The Ninth Circuit applies the *Strong* standard to determine the required level of factual specificity in an inmate's grievance. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002)). Under *Strong*, when a prison's grievance procedures are "silent" or "incomplete" as to factual specificity, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong*, 297 F.3d at 650) (holding that a prisoner's "failure to grieve deliberate indifference does not invalidate his exhaustion attempt" in § 1983 suit alleging cruel and unusual punishment and unsafe living conditions in violation of the Eighth Amendment). Under the Nevada

prison grievance system, an inmate may resolve a claim through the NDOC's administrative process when they can "factually demonstrate a loss or harm," which "aris[es] out of . . . issues within the authority and control of the NDOC." (ECF No. 52-7 at 2.)

The grievances filed demonstrate that Thompson put NDOC officials on clear notice of the harsh weather conditions his unit was exposed to and provides a basis for the deliberate indifference, equal protection, and disability discrimination claims. First, in his informal grievance, Thompson writes that Unit 3 inmates were ordered to stay on the athletic field from approximately 11:10 a.m. to 2:45 p.m. while officers conducted a compliance check, detailing "temperatures above 100 [degrees]" and an absence of shade or "any [restroom] facilities." (ECF No. 52-3 at 6-7.) In denying Thompson's informal grievance, prison officials referred to "conditions of confinement not meeting minimum standards," which they averred to remedy by placing inmates in the gymnasium in the future. (*Id.* at 12.) Thompson further stated in his first-level grievance that, "The men of unit three C wing were called back in the unit at 12:15, but the rest of the men in the unit, mostly 50 to 60 years of age, were forced to stay out in the extreme heat, locked in the athletic field untill 2:48," suggesting that Thompson's unit of elderly and disabled inmates was treated differently from able-bodied counterparts—supporting his equal protection and disability discrimination claims. (*Id.* at 16.) Moreover, Thompson noted that he was aware of two other men who needed medical attention during the incident and stated, "but we could not get any officers' attention," further grieving that "there had not been any gate calls for them to get inside." (*Id.*) Thompson reported that, as a result, he suffered "major burns" to both arms, his neck, and the top of his head along with extreme migraine headaches, elevated blood pressure, fever, and extreme exhaustion. (*Id.* at 8.) In response, prison officials claimed, "Medical attention was provided in the form of Sunscreen and IBU's." (*Id.* at 25.)

In their Motion, Defendants argue that Thompson's grievances addressed only the conditions of confinement during the incident and that he neither requested medical care

as a remedy nor complained of being denied care. (ECF No. 52 at 9.) However, the full grievance record shows that (1) Thompson emphasized the harm to his physical health by describing symptoms he experienced both during and after the incident; (2) Thompson asserted prison officials' apparent indifference to inmates' medical needs; and (3) prison officials operated under the belief that Thompson's grievances, in part, raised concerns about medical issues and a lack of adequate care. Defendants further contend that Thompson failed to allege any age- or disability-based discrimination. (*Id.*) However, as noted above, Thompson alluded to the fact that one group of inmates was treated differently from another based on physical capabilities and based on upon age. Thompson's grievances were thus based on the same underlying context now supporting his Eighth Amendment medical indifference, equal protection, and disability discrimination claims. The grievance process is intended to alert prisons to "the nature of the wrong"—here, primarily conditions of confinement but also corresponding constitutional issues and discriminatory treatment[12]—and "not to lay groundwork for litigation". *See Griffin*, 557 F.3d at 1120 (holding that a grievance need not state every relevant fact, nor state a legal cause of action). And, here, the Court finds Thompson adequately complied with NDOC grievance procedures by alerting officials to a "loss or harm . . . arising out of . . . issues within the authority and control of the NDOC" in sufficient factual detail. (ECF No. 52-7 at 2.)

Therefore, the record demonstrates that Thompson followed proper grievance procedures through all levels of review and that his grievances were sufficiently specific to provide notice of the relevant issues. Viewing all evidence in the light most favorable to Thompson, a rational trier of fact could find that Defendants failed to prove the affirmative defense of non-exhaustion. *See Albino*, 747 F.3d at 1166, 1176 (recognizing defendants' initial burden to prove this affirmative defense). The Court therefore rejects

---

[12]Both the ADA, 42 U.S.C. § 12132, and the RA, 29 U.S.C. § 794, apply in the prison context. *See United States v. Georgia*, 546 U.S. 151, 154 (2006). The Ninth Circuit has concluded that these Acts can constitutionally be applied to state prisons. *See Thompson v. Davis*, 295 F.3d 890, 895-99 (9th Cir. 2002); *Clark v. Cal.*, 123 F.3d 1267, 1270-71 (9th Cir. 1997).

1  Judge Denney's R&R and denies Defendants' Motion on the issue of administrative
2  exhaustion.

3  **B.    Eighth Amendment—Conditions of Confinement Claim**

4        The Court turns to the merits of Thompson's Eighth Amendment conditions of
5  confinement claim against Walker and finds that a genuine factual dispute exists as to
6  whether Walker knew of and disregarded a risk to Thompson's health or safety on the
7  day of the incident. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S.
8  317, 322 (1986); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982) (holding
9  that summary judgment requires the moving party to bear the burden of showing that
10  there are no genuine issues of material fact); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
11  242, 256 (1986) (Once the moving party satisfies Rule 56's requirements, the burden then
12  shifts to the party resisting the motion to "set forth specific facts showing that there is a
13  genuine issue for trial.").

14       The Eighth Amendment prohibits the imposition of cruel and unusual punishments
15  and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and
16  decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotation
17  marks omitted). While prison conditions need not be "comfortable," deprivations
18  constituting an "unnecessary and wanton inflection of pain" or denying the "minimal
19  civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth
20  Amendment violation. *See Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (citation and
21  internal quotation marks omitted). In essence, prison officials have a duty to guarantee
22  adequate food, clothing, shelter, and medical care. *See Farmer v. Brennan*, 511 U.S. 825,
23  832 (1994).

24       When a prison official is accused of imposing unsafe conditions of confinement in
25  violation of the cruel and unusual punishment clause of the Eighth Amendment, the
26  inquiry turns on whether the official "acted with deliberate indifference to a substantial risk
27  of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). A prison official is
28  deliberately indifferent when two requirements are met: (1) the objective requirement that

the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind."[13] *See Farmer*, 511 U.S. at 834-35 ("[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").

In evaluating the objective prong, courts may consider some conditions "in combination" when, taken together, they amount to an Eighth Amendment violation. *See Wilson*, 501 U.S. at 304 ("[F]or example, a low cell temperature at night combined with a failure to issue blankets" can produce a "mutually enforcing effect," depriving human needs such as "warmth."). Moreover, when evaluating conditions of confinement, courts should also consider the length of time the prisoner has been subjected to the condition. *See Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) ("The circumstances, nature, and duration of a deprivation of [ ] necessities must be considered in determining whether a constitutional violation has occurred.") And "the more basic the need, the shorter the time it can be withheld." *Johnson*, 217 F.3d at 731 (referencing the Eighth Circuit's finding, *see Gordon v. Faber*, 973 F.2d 686, 687 (8th Cir. 1992), that an Eighth Amendment violation occurred "where prison officials required inmates to remain outdoors in subfreezing temperatures for less than two hours, even though the inmates were provided with hip-length, lined denim coats and allowed to move freely"). Temperature is also a factor. *See Graves v. Arpaio*, 623 F.3d 1043, 1049 (9th Cir. 2010) (affirming that "dangerously high temperatures that pose a significant risk to detainee health violate the Eighth Amendment" and holding that "one measure of an inadequate, as opposed to merely uncomfortable, temperature is that it poses 'a substantial risk of serious harm'" (internal citation omitted)). Here, the Court finds that detaining elderly and physically disabled inmates with preexisting medical conditions, such as Thompson, in excessive heat for a

---

[13]To prevail on a conditions of confinement claim under the Eighth Amendment, a plaintiff must make both of these showings. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (citing *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)).

prolonged period poses a "substantial risk of serious harm" and satisfies the objective prong.

To satisfy the subjective prong, a plaintiff must show actual knowledge—that prison officials knew of and disregarded a risk to inmate health or safety created by the condition. *See Farmer*, 511 U.S. at 826. Here, the primary factual dispute revolves around whether Walker had knowledge of the three-hour outdoor detention. In their Motion, Defendants dispute the subjective prong, arguing that Walker was not deliberately indifferent because she "had no actual knowledge of th[e] alleged confinement condition" and therefore did not violate Thompson's Eighth Amendment rights. (ECF No. 52 at 14.) Defendants assert that Walker did not "personally participate[]" in the alleged three-hour unconstitutional confinement because she completed her shift at 11:18 a.m., approximately three minutes after the Unit 3 inmates were taken out to the athletic field. (*Id.* at 13.) Notwithstanding, Walker, herself, concedes in her declaration that she was on shift that day and ordered the compliance check on Unit 3 along with the inmates' placement on the athletic field. (ECF No. 52-10 at 3.) Walker further acknowledges that she was aware of the physical mobility issues affecting some of the Unit 3 inmates. (*Id.*)

Moreover, in his Complaint and grievance record, Thompson alleges a series of factual circumstances detailing prison officials' failure to conduct regular gate calls during the detention along with inmates' complaints of discomfort. (ECF No. 52-3 at 16 ("Additionally, some men from unit one were out there with us were complaining that there had not been any gate calls for them to get inside out of the blistering sun.").) While Walker claims she was "not notified of any issues raised by an inmate" and that correctional officers were instructed to conduct gate calls every 30 minutes (ECF No. 52-10 at 3), the Court finds that such a determination requires a fact-intensive assessment, making summary judgment improper.

In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp.*, 793 F.2d at 1103. Viewing the evidence in the light most favorable to Thompson, the Court

1  finds that Defendants fail to show an absence of a genuine dispute of material fact as to

2  the subjective component of Thompson's Eighth Amendment claim as applied to Walker.

3  Accordingly, the Court denies Defendants' Motion as to the conditions of confinement

4  claim.

5    C.   **Qualified Immunity[14]**

6    Defendants argue they are entitled to qualified immunity for Thompson's Eighth

7  Amendment and Fourteenth Amendment claims. (ECF No. 52 at 6, 9-20.) First, they

8  argue Thompson cannot establish an Eighth Amendment conditions of confinement

9  violation because he cannot show that Walker was subjectively aware of his condition

10 during the detention. (*Id.* at 12-15.) Next, Defendants argue Thompson is unable to

11 establish an Eighth Amendment violation for deliberate indifference to a serious medical

12 need based upon insufficient medical records and notice. (*Id.* at 12-13, 15-16.)

13 Defendants further contend that Thompson cannot show that Walker intentionally

14 discriminated against him due to his disability or age in violation of the Fourteenth

15 Amendment Equal Protection Clause. (*Id.* at 13, 16-20.) Thompson counters that

16 Defendants are not entitled to qualified immunity because Defendants violated clearly

17 established law along with his Eighth and Fourteenth Amendment rights. (ECF No. 68 at

18 2-6.)

19    Qualified immunity is an "immunity from suit rather than a mere defense to liability."

20 *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine of qualified immunity attempts

21 to balance two important and sometimes competing interests: "the need to hold public

22 officials accountable when they exercise power irresponsibly and the need to shield

23 officials from harassment, distraction, and liability when they perform their duties

24 reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks

25 and citation omitted). To determine whether qualified immunity applies, the Court must

26 consider "(1) whether the official violated a constitutional right and (2) whether the

27

28    [14]The magistrate judge did not analyze qualified immunity in the R&R. The Court now conducts *de novo* review of Defendants' qualified immunity.

12

constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson* 555 U.S. at 232). District courts have discretion to address these prongs in any order. *Pearson*, 555 U.S. at 236.

Regarding the conditions of confinement claim, as discussed above, Defendants have not demonstrated an absence of a genuine dispute of material fact as to whether they violated Thompson's Eighth Amendment rights by detaining elderly and physically disabled inmates with preexisting medical conditions in excessive heat for a prolonged period.

Regarding the medical deliberate indifference claim, Defendants have similarly failed to meet their burden on summary judgment. Defendants' argument that Thompson "fail[ed] to establish that he had a serious medical need" or that he failed to properly grieve his resulting symptoms to NNCC medical staff is unconvincing. (ECF No. 52 at 15-16.) Under the second prong of a qualified immunity analysis, the proper inquiry is whether a reasonable official would have understood that their actions violated Thompson's rights. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). Here, Defendants concede that they were aware of Thompson's preexisting medical conditions, citing records covering a three-year period during which Thompson was monitored for Behcet's disease. (ECF No. 52 at 2 ("Thompson's medical records show he has had Behcet's disease since at least 2017."), 15-16 ("[A]lthough Thompson has had Behcet's disease . . . the record also shows that from 2021 to 2024 Thompson was periodically monitored for this condition and received appropriate medical treatment and medication."); *see also* ECF Nos. 52-4, 54.) A reasonable jury could therefore conclude that Defendants should have, and could have, understood that placing Thompson and other medically compromised Unit 3 inmates in excessive heat for a prolonged period was deliberately indifferent and a clear violation of Eighth Amendment rights.

Regarding the Fourteenth Amendment equal protection claim, Defendants cannot show that they did not discriminate against Thompson or other disabled inmates. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quotation marks and citation omitted). Here, Defendants argue that Thompson cannot meet the requirements for an equal protection claim because he cannot establish that he belongs to a protected class. (ECF No. 52 at 17.) Yet, even if "the disabled do not constitute a suspect class" for equal protection purposes, *see Does 1–5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996), a governmental policy that treats the disabled differently from the non-disabled must be rationally related to legitimate legislative goals. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (invalidating city ordinance requiring special use permit to house disabled persons in group home). As discussed above, Thompson has alleged that he, along with other physically disabled Unit 3 inmates, were treated differently from their able-bodied counterparts when they were forced to remain outside on the athletic field as opposed to inside the gymnasium. A reasonable jury could find that such treatment did not advance any "legitimate" state interests. *See City of Cleburne*, 473 U.S. at 439-440. Moreover, under the Equal Protection Clause, "all persons similarly situated should be treated alike," and, here, a reasonable jury could also find that the Unit 3 inmates—with their respective mental and physical disabilities—were similarly situated but not treated alike, thereby violating Fourteenth Amendment rights. *See id.* at 439 (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).[15]

Viewing all evidence in the light most favorable to Thompson, the Court finds that

---

[15]Defendants further argue—though not on qualified immunity grounds—that Thompson cannot establish his ADA or RA discrimination claims because there is no evidence that Walker engaged in discriminatory conduct toward him. (ECF No. 52 at 20-21.) The Court applies its same analysis as above and finds that a genuine dispute of material fact exists as to whether Walker discriminated against Thompson due to his disability or age, precluding summary judgment on these claims.

14

1  Defendants are not entitled to qualified immunity because Defendants have not shown
2  an absence of genuine dispute of material fact as to whether they violated Thompson's
3  Eighth and Fourteenth Amendment rights and whether Thompson's rights were clearly
4  established at the time of violation.

5       **D.   Punitive Damages**

6       Lastly, Defendants argue Thompson's claim for punitive damages should be
7  dismissed because there is no clear and convincing evidence of "wanton and willful
8  conduct" rising to the level of oppressive, fraudulent, or malicious behavior, as required
9  under Nevada law. (ECF No. 52 at 22.) However, as to § 1983 claims, "[i]t is well-
10 established that a 'jury may award punitive damages . . . either when a defendant's
11 conduct . . . involved a reckless or callous indifference to the constitutional rights of
12 others.'" *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993). Taken together,
13 Thompson's allegations could lead a reasonable jury to conclude that prison officials
14 acted with reckless or callous disregard for the health and safety of Thompson and other
15 Unit 3 inmates by exposing them to excessive heat for over three hours in violation of the
16 Eighth Amendment—conduct that could support an award of punitive damages.
17 Accordingly, viewing all evidence in the light most favorable to Thompson, the Court
18 denies Defendants' request for summary judgment as to the punitive damages claim, as
19 this question is one best left to a jury.

20 **IV.   CONCLUSION**

21      The Court notes that the parties made several arguments and cited to several
22 cases not discussed above. The Court has reviewed these arguments and cases and
23 determines that they do not warrant discussion as they do not affect the outcome of the
24 Motion before the Court.

25      It is therefore ordered that Judge Denney's report and recommendation (ECF No.
26 75) is rejected.

27      It is further ordered that Defendants' motion for summary judgment (ECF No. 52)
28 is denied.

1    The Court refers this case to Judge Denney to conduct a settlement conference.

2    The proposed joint pretrial order is due 30 days from the settlement conference.

3    DATED THIS 17th Day of October 2025.

4

5

6    _____
     MIRANDA M. DU
7    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28